**Ty Hyderally, Esq. (Atty. ID No.: 023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
TYH@EMPLOYMENTLIT.COM
Attorneys for Plaintiff, Lucie K. Voss

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUCIE K. VOSS,**<br><br>**PLAINTIFF,**<br><br>**VS.**<br><br>**KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION,**<br><br><br>**DEFENDANT.** | CIVIL ACTION No:<br><br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff, Lucie K. Voss ("Ms. Voss" or "Plaintiff"), residing at 30 Lavender Drive, Edison, New Jersey 08820, by way of this Complaint against Defendant, Kilolo Kijakazi, Acting Commissioner, U.S. Social Security Administration ("SSA"), (hereinafter "Defendant") hereby says:

### I. Nature of Action, Jurisdiction, and Venue

1.  This is an action seeking equitable and legal relief for: (1) a violation of the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C.S. §623(a)(1) (Disparate Treatment); and (2) a violation of the ADEA, 29 U.S.C. § 633a(a) (Retaliation).

2.  Jurisdiction is asserted under 28 U.S.C. § 1331 in so far as Plaintiff's Complaint asserts claims under 29 USCS §§ 623(a)(1) and 633a(a).

3.    Venue is proper pursuant to 28 U.S.C. § 1391 because each Defendant does business in the State of New Jersey and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

4.    Ms. Voss filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's July 28, 2021 final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq*.

5.    On January 31, 2023, the Commission affirmed the Agency's final decision and notified Ms. Voss of her right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date of her receipt of that decision.

6.    Thus, Ms. Voss has properly exhausted her administrative remedies and timely files this matter before this Court.

## II.  Parties

7.    At all times relevant herein, Ms. Voss was an employee of the SSA, resident of Middlesex County and performed job-related duties in this judicial district.

8.    Kilolo Kijakazi is the duly appointed Acting Commissioner of the SSA, a federal executive agency as that term is defined in 5 U.S.C. 105. She is sued in her official capacity as head of the Agency and, as such, is amenable to suit.

9.    The SSA's headquarters are located at 6401 Security Boulevard, Woodlawn, Maryland 21207.

## III.   Factual Allegations

10.   Ms. Voss, date of birth June 22, 1958, has been employed continuously by the SSA since September 15, 1975, when she was hired as a Clerk.

11.   Ms. Voss rose through the ranks and in 1988 was promoted to Operations Supervisor, and was assigned to work in SSA's Woodbridge, New Jersey field office in September 2000, which is part of the SSA's New York Region.

12.   In 2005, Ms. Voss was promoted to the Assistant District Manager ("ADM") for the SSA's Woodbridge, New Jersey field office.

13. In January 2009, Ms. Voss was further promoted to the position of District Manager ("DM"), for the SSA's Woodbridge, New Jersey field office.

14. Ms. Voss continued in her position of DM for the SSA's Woodbridge, New Jersey field office, until her employment ended on January 3, 2021.

15. Throughout her employment Ms. Voss performed her job duties in an exceptional matter and received promotions and salary increases.

16. Ms. Voss has also received an annual Recognition of Contribution award ("ROC") and/or Cash Service Award ("ESCA") in nearly every year she was employed by the SSA.

17. Ms. Voss was a dedicated employee who served as the Secretary of the Social Security New York Region Management Society ("NYRMS"), from 2010 to 2016 and Vice President of the NYRMS from 2017 to January 3, 2021.

18. SSA employees who display outstanding performance are eligible to receive quality step increases (QSI), which are additional within-grade increases (WGI) used to recognize and reward General Schedule (GS) employees. (https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/quality-step-increase/).

19. A QSI has the effect of moving an employee through the GS pay range faster than by periodic step increases alone. *Id*.

20. To be eligible for a QSI, employees must: (1) be below step 10 of their grade level; (2) have received the highest rating of record available under their performance management program; (3) have demonstrated sustained performance of outstanding quality; (4) not have received a QSI within the preceding 52 consecutive calendar weeks; and (5) occupy a "permanent position". *Id*.

21. QSI awards are normally awarded to employees during April or May, for the prior fiscal year ("FY"), which runs from October 1 to September 30.

22. Ms. Voss was well-qualified for a QSI award for each of FY 2017 (October 1, 2016 through September 30, 2017), FY 2018 (October 1, 2017 through September 30, 2018) and FY 2019 (October 1 2018 to September 30, 2019).

23. Ms. Voss earned an "Outstanding" or 5.0 cumulative performance rating for each of FY 2017, 2018 and 2019. (Exhibits "1," "2" and "3").

24. Further, Ms. Voss' "outstanding contributions," leadership skills in developing employees and management staff over many years, and extensive knowledge of SSA programs and administrative and personnel responsibilities demonstrated "sustained performance of outstanding quality" meriting her receipt of a QSI in FY 2017, FY 2018 and FY 2019. (*Id.*).

25. During FY 2017, Mr. Bailey frequently praised Ms. Voss for her successful performance of her assignments, including but not limited to developing a new Assistant District Manager ("ADM"), Viktorya Vinokurov. (Exhibit "1").

26. During FY 2017, Mr. Bailey also repeatedly commended Ms. Voss on her ability to successfully manage union issues for her office and the entire state of New Jersey.

27. Ms. Voss' valuable contributions and outstanding performance in FY 17 was further reflected in her performance assessments and appraisals for FY 17 (Exhibit "1").

28. Thus, Ms. Voss fully anticipated receiving a QSI award for FY 2017.

29. The determination to award a QSI to an employee is made by an employee's first level supervisor.

30. From November 2015 through January 2021, Ms. Voss reported to first-line supervisor Rick Bailey ("Mr. Bailey"), New Jersey Area Director, Area 5, New York Region.

31. Despite Ms. Voss' overwhelming qualifications and contributions, Mr. Bailey determined not to award Ms. Voss, then age 59, a QSI for FY 2017.

32. For FY 2017, QSI awards were given to employees who were significantly younger than Ms. Voss, had less years of service and experience than Ms. Voss and who had not demonstrated as much of a sustained performance of outstanding quality as had Ms. Voss.

33. For example, in the spring of 2018, Mr. Bailey chose to award a QSI for FY 2017 to Johanny Belen-Papp, Area Administrative Assistant, then age 43 and Eric Hong, OS, then age 39.

34. After Ms. Voss learned that she had been denied a QSI for FY 2017, in or about April of 2018, Ms. Voss approached Mr. Bailey and asked him the reason why he had denied her a QSI for FY 2017.

35. Mr. Bailey responded merely that he did not select Ms. Voss as a QSI recipient.

36. Ms. Voss raised with Mr. Bailey that the QSI would have a significant impact upon her retirement, as she was nearing retirement age.

4

37.    Mr. Bailey did not respond.

38.    However, during a December 2018 area managers meeting, Mr. Bailey revealed his reason for not awarding Ms. Voss a QSI.

39.    In an area managers meeting, Mr. Bailey unequivocally stated that he wanted to give QSIs to younger management employees.

40.    Mr. Bailey's ageist comment was open and notorious and said in front of Ms. Voss.

41.    Despite the fact that the comment was humiliating and discriminatory to Ms. Voss, Mr. Bailey offered no apologies or explanation for his ageist propensities.

42.    Mr. Bailey is younger than Ms. Voss and clearly expressed a preference for younger employees, as reflected in the comment noted above and his ageist actions with regard to the award of QSIs.

43.    Ms. Voss was shocked by Mr. Bailey's blatant and unapologetic disparate treatment of her, due to her age.

44.    For FY 2018, Ms. Voss once again achieved an outstanding rating of 5.0 (Exhibit "2").

45.    In addition, during FY 2018, Mr. Bailey informed Ms. Voss that he was specifically placing Philip Adase ("Mr. Adase"), a participant in the Regional Leadership Development Program, in Ms. Voss' office in order for her to work with Mr. Adase, based upon Mr. Bailey's confidence in Ms. Voss' abilities to develop and enhance Mr. Adase's management skills.

46.    Ms. Voss successfully developed this management employee, as Mr. Adase was promoted to a District Manager of the Brick, New Jersey level 2 field office in October 2018, and subsequently further promoted in 2022 to a level 1 field office in Staten Island, New York. (Exhibit "2").

47.    During FY 2018, Ms. Voss also successfully developed an Executive Assistant, Zeina Aboumrad, from the Regional Commissioner's Office who had no field office experience. (Exhibit "2").

48.    During FY 2018, Ms. Voss continued to successfully manage union issues, as well as develop a newer management team. (Exhibit "2").

49.    Thus, once again, Ms. Voss had every reason to believe that she would be awarded a QSI for FY 2018.

50.     Unfortunately, Mr. Bailey continued to utilize age as the determining factor for QSI awards for FY 2018.

51.     Despite Ms. Voss' overwhelming qualifications and contributions, Mr. Bailey determined not to award Ms. Voss a QSI for FY 2018.

52.     Thus, when the QSIs for FY 2018 were granted in April or May of 2019, Ms. Voss, then age 60, was not selected.

53.     For FY 2018, QSI awards were given to employees who were significantly younger than Ms. Voss, had less years of service and experience than Ms. Voss and who had not demonstrated as much of a sustained performance of outstanding quality as had Ms. Voss.

54.     Thus, Mr. Bailey's Deputy Area Director, Lois Bryant Collins, pursuant to Mr. Bailey's direction, awarded QSIs for FY 2018 to employees who were younger than Ms. Voss.

55.     In or about later April 2019, Ms. Voss then approached Mr. Bailey and asked him why she had not been awarded a QSI for FY 2018, despite her outstanding rating for FY 2018 and her numerous accomplishments and successes during FY 2018, as noted above.

56.     Mr. Bailey stated that he wanted to give QSIs to the younger employees to encourage and motivate them.

57.     Ms. Voss objected to Mr. Bailey's ageist statement, which reflected preferential treatment of younger employees, and Ms. Voss reminded him that it was especially detrimental to her to not receive a QSI as she was nearing retirement.

58.     Mr. Bailey stated in curt manner "I don't care about your retirement. It doesn't concern me."

59.     Ms. Voss reminded Mr. Bailey that she had an outstanding 5.0 rating for FY 2018 and went through her numerous accomplishments and successes during FY 2018 which Mr. Bailey had specifically recognized in her performance appraisal. (Exhibit "2").

60.     Mr. Bailey said nothing and terminated the conversation.

61.     Shortly thereafter, during April 2019, Ms. Voss discussed Mr. Bailey's refusal to award her a QSI for FY 2017 and FY 2018 with her colleague, Valerie Fisher ("Ms. Fisher"), DM. (Exhibit "4").[1]

---

[1] Attached as Exhibit "4" is the Affidavit of Valerie Fischer that was included in the Report of Investigation of Ms. Voss' EEO Complaint, conducted by the SSA, but which was incorrectly captioned "Bailey Affidavit."

62.    Ms. Fisher then relayed to Ms. Voss that in the Spring of 2018, she had also discussed with Mr. Bailey his awarding of QSIs only to younger employees. (Exhibit "4").

63.    Ms. Fisher, who was 56 years old at the time, asked Mr. Bailey the reason why she had not received a QSI for FY 2017, despite her eligibility for a QSI, noting that she was nearing her retirement and thus the QSI would have a significant impact upon the computation of her retirement benefits. (Exhibit "4").

64.    Mr. Bailey reminded Ms. Fisher of his having announced at the area managers meeting in December 2018 his decision to give QSI awards to younger management employees. (Exhibit "4).

65.    During FY 2019, Ms. Voss continued to make substantial contributions to her office, excel in her role and received an overall outstanding performance rating of "5.0" (Exhibit "3").

66.    For example, in February 2019, Mr. Bailey told Ms. Voss that he was reassigning ADM Kathleen Faustino ("Ms. Faustino") from the Union, New Jersey office to the Woodbridge Office under the supervision of Ms. Voss, as Ms. Faustino was having difficulty with her DM.

67.    Ms. Voss successfully developed Ms. Faustino, despite the fact that Ms. Faustino was a newer ADM with minimal exposure to administrative duties. (Exhibit "3").

68.    Ms. Voss also continued to successfully negotiate union issues, which was especially challenging in FY 2019, as a new union contract went into effect which revoked many prior union privileges. (Exhibit "3").

69.    Unfortunately, once again, Mr. Bailey persisted in continuing to utilize age as the determining factor for QSI awards for FY 2019.

70.    Despite Ms. Voss' overwhelming qualifications and contributions, Mr. Bailey determined not to award Ms. Voss a QSI for FY 2019.

71.    Further, Mr. Bailey determined not to award Ms. Voss a QSI for FY 2019 in retaliation for her complaining of his ageist actions.

72.    Thus, despite Ms. Voss having an extremely successful year during FY 2019, on June 3, 2020, Ms. Voss, then age 61, learned that once again, Mr. Bailey had not selected her as a QSI award recipient for FY 2019.

73.  For FY 2019, QSI awards were given, once again, to employees who were significantly younger than Ms. Voss, had less years of service and experience than Ms. Voss and who had not demonstrated as much of a sustained performance of outstanding quality as had Ms. Voss.

74.  For example, Mr. Bailey issued QSIs for FY 2019 to employees Diana Pohner ("Ms. Pohner"), then age 38, Glenda Caramelli ("Ms. Caramelli"), then age 45 and Aracelis Maldonado Maldanado ("Ms. Maldanado"), then age 52, respectively.

75.  Ms. Pohner was selected for a QSI for FY 2019, despite the fact that Mr. Bailey failed to identify any significant operational improvements made by Ms. Pohner during FY 2019 warranting a QSI.

76.  The purported reason for Mr. Bailey's selection of Ms. Caramelli as a recipient of a QSI for FY 2019 was that Ms. Caramelli had been involved in 2 performance plans during FY 2019.

77.  However, Ms. Voss was involved in more than 25 employee performance plans per year and was thus more deserving of a QSI than Ms. Caramelli.

78.  Ms. Maldanado was selected for a QSI award for FY 2019, despite the fact that Mr. Bailey had not even selected her for a DM position for which she applied in FY 2019.

79.  Thus, but for Ms. Voss' age, Mr. Bailey would have chosen Ms. Voss as a QSI award recipient for FY 2017, FY 2018 and FY 2019.

80.  Due to systematic age discrimination that permeated the agency due to Mr. Bailey's actions, Ms. Voss made a formal complaint of age discrimination with the EEO on or about June 4, 2020.

81.  On June 22, 2020, Mr. Bailey was notified of the filing of Ms. Voss' EEO Complaint against him.

82.  Three days later, on June 25, 2020, Mr. Bailey issued Ms. Voss a proposed 14-day suspension. (Exhibit "5").

83.  This was the first time in Ms. Voss 45-year career that she had ever been threatened with discipline.

84. The purported reason for proposing to suspend Ms. Voss was clearly a pretext for discrimination and retaliation against Ms. Voss for engaging in the protected activity of filing an EEOC complaint of age discrimination.

85. Mr. Bailey's actions were flagrantly baseless and clearly retaliatory.

86. Thus, Ms. Voss then amended her EEO complaint to add a claim of retaliation.

87. In fact, Peggy Murphy ("Ms. Murphy"), the past President of the National Council of Social Security Management Associations ("NCSSMA") and David Lescarini ("Mr. Lescarini"), the current President of NCSSMA, have both attested to the fact that Mr. Bailey's actions in threatening to suspend Ms. Voss had no legitimate basis. (Exhibits "6" and "7").

88. In fact, Mr. Bailey's allegation of Ms. Voss' purported wrongdoing, was an allegation concerning the same actions that other managers took every day.

89. This is why Ms. Murphy reached out to Eric Jones, Assistant Deputy Commissioner for Operations for the SSA and to Fred Maurin, Assistant Deputy Commissioner for Operations for the SSA.

90. Ms. Murphy poignantly stated, "The proposed discipline seemingly had the potential to affect every manager in our agency, because the actions being describe[d] to me were actions that we take every day in the course of our day as we help people in and out of our service area." (Exhibit "6").

91. Similarly, Mr. Lescarini stated that, "It is very common for employees, including managers, to assist customers in neighboring office service areas and even customers from further afield. In my experience and based on my interaction with management personnel from all over the country, the term "jurisdiction" in no way applies to the scope of action of field office employees including management and therefore is not something that would or should be the basis for discipline. I know of no field office employee, including management, that has ever been disciplined for providing service to individuals who reside in other field offices' service areas." (Exhibit "7").

92. Despite that Mr. Bailey was well-aware that the proposed suspension had no legitimate basis, on or about late November 2022, Ms. Voss was informed that Mr. Bailey refused to rescind the proposed suspension and thus the same would be issued in the near future.

93. Mr. Bailey's actions were also contrary to the SSA's progressive discipline policy, which provides that "SSA generally uses progressive discipline to correct and improve employee behavior. SSA may initiate such progressive disciplinary patterns as reprimand, short- or long-term suspension, demotion, and removal. These are usually preceded by counseling and oral warnings." (https://oig.ssa.gov/audit-reports/2015-11-02-audits-and-investigations-audit-reports-A-08-15-50020/).

94. Thus, to the extent that Ms. Voss engaged in wrongdoing, same being denied, Mr. Bailey should have first counseled her before he took any disciplinary action.

95. Mr. Bailey skipped over counseling Ms. Voss, giving Ms. Voss an oral warning, reprimanding Ms. Voss, and imposing a short-term suspension, as he jumped straight to threatening a long-term suspension.

96. Mr. Bailey knowingly took this action to change Ms. Voss' work world into an intolerable work environment that no reasonable person could endure.

97. Such actions were designed to force Ms. Voss to resign or otherwise face having a disciplinary action on her otherwise unblemished 45-year career with the SSA.

98. Thus, Ms. Voss was forced to be constructively discharged on January 3, 2021.

99. Prior to her filing an EEO Complaint, Ms. Voss had never received any warnings about her performance.

100. Prior to her filing an EEO Complaint, Ms. Voss had never been written up.

101. Prior to her filing an EEO Complaint, Ms. Voss had never been disciplined.

102. Defendants never put Ms. Voss on a performance improvement plan regarding her performance before they constructively discharged her.

103. Ms. Voss has suffered and continues to suffer from depression, anxiety, sleeplessness and loss of appetite, due to Defendants' discrimination and retaliatory termination.

104. Defendants' adverse actions were so intolerable that Ms. Voss sought counseling with a therapist Sheri S. Black, LCSW.

105. Defendants' actions resulted in physical injuries to Ms. Voss and/or to the physical manifestation of emotional distress damages.

106. After Ms. Voss' termination, some and/or all of her job functions survived and were performed by other younger employees.

10

107.    At the time of her constructive discharge on January 3, 2021, Ms. Voss was earning an annual salary of $155,172 (Grade 14, Step 8) and received benefits, to include but not be limited to medical, dental and vision insurance benefits, 5 weeks of paid time off per year, approximately 12 paid holidays per year, and retirement benefits pursuant to the Civil Service Retirement System.

108.    Had Ms. Voss been awarded a QSI for any two of the years FY 2017, FY 2018, or FY 2019, at the time of her constructive discharge on January 3, 2021, she would have been earning an annual salary of $163,559 (Grade 14, Step 10).

109.    In addition, the failure to award Ms. Voss a QSI for any two of the years FY 2017, FY 2018, or FY 2019 has negatively impacted the amount of her retirement benefits.

## COUNT I

### Age Discrimination in Employment Act, 29 USCS § 623(a)(1)
### (Disparate Treatment)

110.    Plaintiff realleges and incorporates herein the other paragraphs contained in this Complaint.

111.    At all times relevant herein, Plaintiff has been over 40 years of age and therefore a member of the protected class under the Age Discrimination in Employment Act.

112.    At all times relevant herein, Plaintiff was qualified for her position of District Manager.

113.    Plaintiff suffered an adverse action of not receiving QSI performance awards for FY 2017, FY 2018 and FY 2019, which negatively impacted her salary and her retirement benefits.

114.    Plaintiff further suffered adverse actions of a proposed 14-day suspension and constructive discharge.

115.    But for Plaintiff's age, she would not have suffered the adverse employment actions.

116.    Plaintiff was replaced by Ms. Faustino, age early 40s.

117.    Ms. Faustino is sufficiently younger than Plaintiff to permit a reasonable inference of age discrimination.

118.    The foregoing facts and circumstances give rise to a disparate treatment claim of age discrimination in violation of the Age Discrimination in Employment Act 29 USCS § 623(a)(1).

## COUNT II
### Age Discrimination in Employment Act, 29 U.S.C. § 633a(a)
### (Retaliation)

119.  Plaintiff realleges and incorporates herein the other paragraphs contained in this Complaint.

120.  Plaintiff engaged in protected activity of filing an EEO complaint.

121.  Defendants were aware of that activity.

122.  On June 22, 2020, Mr. Bailey learned that Plaintiff had filed an EEO complaint against him for age discrimination.

123.  Following Ms. Voss' engaging in protected activity, on June 25, 2020, Plaintiff suffered an adverse action of a proposed 14-day suspension and on January 3, 2021, Plaintiff suffered an adverse action of a constructive discharge.

124.  There was a causal connection between the protected activity and the adverse actions.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

A.  Compensatory damages of not less than $750,000;

B.  Pension loss;

C.  Damages for humiliation, mental and emotional distress;

D.  Statutory damages, if applicable;

E.  Punitive damages and or liquidated damages where permitted by law;

F.  Attorneys' fees and costs of suit;

G.  Lawful interest - including pre-judgment interest on lost wages;

H.  Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

I.  Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

12

## JURY DEMAND

Pursuant to Rule 38, Plaintiffs demand a trial by jury on all Counts.

## RULE 11 CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff, Eric Adams*

By: _____
**TY HYDERALLY, Esq.**
**For the Firm**

DATED:          April 21, 2023

T:\Voss Lucie\Pleadings\042023.COM.docx

EXHIBIT "1"

## PACS Performance Plan
## Managers/Supervisors
## Appraisal

**Appraisal Year:** 2017

**Plan ID:** 877610

**Employee:** VOSS  LUCIE  K

            Last       First      MI

**SSN:** XXX-X

DISTRICT MANAGER           03E284S        0105/14
**Position Title**           **Position #**      **Series/Grade**

| Summary Appraisal | | Element Average | |
|---|---|---|---|
| | | Ratings in Individual Elements: | |
| Outstanding Contribution | X | | |
| Successful Contribution | | Interpersonal Skills | 5 |
| Not Successful | | Participation | 5 |
| | | Demonstrates Job Knowledge | 5 |
| | | Achieves Business Results | 5 |
| | | Demonstrates Leadership | 5 |
| | | Manages Performance | 5 |
| | | Total | 30 |
| | | Divide total number of Elements to equal the Element Average | 5.0 |

**Performance Appraisal:**

**1. Interpersonal Skills:**

**Final Rating Discussion:**

Lucie you are an effective communicator, you are engaged and always professional.  You treat the public and your employees with respect and you have built good relationships within the office.  You have done a good job communicating with the AFGE president and other reps and have made the best of the situation.  You have been able to deal with issues locally and successfully.

**Final Rating: Level  5**

**2. Participation:**

**Final Rating Discussion:**

Lucie, you continue to be committed to the agency and its mission and are completely engaged at all levels.  You participate in meetings and call and your input and feedback is valuable and I appreciate your counsel.  You remain a leader with the Area's management team and are relied upon by many for

Exhibit 02-03
Page 1 of 11

support.  Your efforts and commitment in FY17 has led to significant operational improvement and even the ability to begin to assist the Area as a whole.  Thank you!

**Final Rating: Level  5**

## 3. Demonstrates Job Knowledge:

**Final Rating Discussion:**

Lucie, you have really good operational knowledge and have set high standards within the office.  You have effective plan in place to oversee integrity of the work process.  You have good administrative knowledge as well as EEO and LMR issues.  You consult and ask appropriate questions and make sound decisions as a result.  Please continue to focus on the improvements and the integration of automation and efficiencies.

**Final Rating: Level  5**

## 4. Achieves Business Results:

**Final Rating Discussion:**

Lucie, I have seen sustained improvements operation during FY17.  I know that you have worked very hard to make these improvements and this effort is much appreciated.  Thank you!  I need this continued focus as all of the problems in the past are now in the past I would like the focus on Woodbridge becoming a resource to help other parts of the area and I ask that your focus on this during FY18.

**Final Rating: Level  5**

## 5. Demonstrates Leadership:

**Final Rating Discussion:**

Lucie, you are a good leader and many people rely on you for guidance throughout the area.  You are engaged at all levels and I appreciate you input and thoughts.  You have provided ongoing advice and support in the development of a new management team.  You were able to quickly incorporate the TSC staff into the office and continued to focus on developing new employees.  There were many operational improvements this year despite some difficult circumstances and challenges.

**Final Rating: Level  5**

## 6. Manages Performance:

**Final Rating Discussion:**

Lucie, you have good oversight of the PACS and support PACS principles.  You have done a good job of building a new management team and championed many operation improvements this year.  Please continue to build on the operational improvements and development of the staff.  You have high standard for quality and integrity of the workloads and you maintain effective controls to prevent improper payments.  Thank you for your efforts.

**Final Rating: Level  5**

Exhibit 02-03
Page 2 of 11
2 of 3

VOSS LUCIE K - 2017 - APPRAISAL

*This box will remain blank unless it contains a handwritten signature. Electronic signatures will be on the last page.*

## Informational Appraisal:

| Employee | Supervisor | Date |
|---|---|---|

*This box will remain blank unless it contains a handwritten signature. Electronic signatures will be on the last page.*

## Final Appraisal:

| Employee | Supervisor | Date |
|---|---|---|
| *Lucie KVoss* | | 12/13/17 |

Exhibit 02-03
Page 3 of 11
3 of 3

VOSS LUCIE K - 2017 - APPRAISAL

# EXHIBIT "2"

# PACS Performance Plan
## Managers/Supervisors
## Appraisal

**Appraisal Year:** 2018                                      **Plan ID:** 956441

**Employee:**   VOSS  LUCIE  K                                **SSN:**
               **Last          First        MI**

DISTRICT MANAGER                        03E284S                0105/14
**Position Title**                      **Position #**         **Series/Grade**

| Summary Appraisal | | Element Average | |
|---|---|---|---|
| | | **Ratings in Individual Elements:** | |
| **Outstanding Contribution** | X | | |
| | | **Interpersonal Skills** | 5 |
| **Successful Contribution** | | **Participation** | 5 |
| | | **Demonstrates Job Knowledge** | 5 |
| **Not Successful** | | **Achieves Business Results** | 5 |
| | | **Demonstrates Leadership** | 5 |
| | | **Manages Performance** | 5 |
| | | Total | 30 |
| | | **Divide total number** | |
| | | **of Elements to equal** | 5.0 |
| | | **the Element Average** | |

## Performance Appraisal:

### 1. Interpersonal Skills:

### Final Rating Discussion:

Lucie you are a strong and effective communicator, you are engaged and always professional. You treat the public and your employees with respect and you have built good relationships within the office. You have done a good job communicating with the AFGE president and other reps and have made the best of the situation. You have been able to deal with issues locally and successfully.

### Final Rating: Level   5

### 2. Participation:

### Final Rating Discussion:

You effectively coordinated our hiring efforts this year.  You work closely with your subordinate management team identifying operational problems.  You willingly share your knowledge and expertise with your ADM.

Exhibit 02-03
Page 4 of 11

**Final Rating: Level   5**

## 3. Demonstrates Job Knowledge:

### Final Rating Discussion:

Hosting the AFGE local president in your office has resulted in more than your fair share of LMR activity, which has enabled you to have excellent LMR knowledge in which you freely share with your fellow managers. You are effectively directing the administration of our programs to ensure balanced customer service. Please continue to review your district findings from FY 18 AD security and ensure that there is a plan in place to make appropriate corrections and prevent repeated findings.

**Final Rating: Level   5**

## 4. Achieves Business Results:

### Final Rating Discussion:

You have effectively aligned your resources to ensure service to the public while meeting mandated stewardship targets. Disability appointments needs improvement going forward FY 19.  Moving forward this fiscal year, please have a plan of action in place for your dib appointments.

Woodbrige's final FY 18 PSI:

RZs FYTD: 85.14%
LIs FYTD: 103.35%
Med CDRS to DDS FYTD: 717, 13.79 per week
Waiting Times FYTD: w 7.7| w/o 29.9
TSRP FYTD: 73.8%
DIB Appts FYTD: 56.5%
WebALJ FYTD: 95.9%

**Final Rating: Level   5**

## 5. Demonstrates Leadership:

### Final Rating Discussion:

Lucie, you continue to be a good leader and many people rely on you for guidance throughout the area. You are engaged at all levels and I appreciate your input and thoughts. You have provided ongoing advice and support in the development of a new management team. You take ownership of your office, provide leadership and direction to your staff.

**Final Rating: Level   5**

## 6. Manages Performance:

### Final Rating Discussion:

You support PACS principles and ensure that ratings are based on employee contributions. As part of our stewardship responsibilities, you ensure that effective controls are established and maintained to prevent improper payment. You provide informal and formal recognition of excellent performance of employees.

Exhibit 02-03
Page 5 of 11

**Final Rating: Level  5**

| This box will remain blank unless it contains a handwritten signature.  Electronic signatures will be on the last page. | | |
|---|---|---|
| **Informational Appraisal:** | | |
| **Employee** | **Supervisor** | **Date** |

| This box will remain blank unless it contains a handwritten signature.  Electronic signatures will be on the last page. | | |
|---|---|---|
| **Final Appraisal:** | | |
| **Employee** | **Supervisor** | **Date** |

Exhibit 02-03
Page 6 of 11

## PACS Annual Appraisal

The signatures below pertain to the document identified above.

**Employee Signature**                                              **Date**

| | |
|---|---|
| *LUCIE K. VOSS* | November 30, 2018 |

**Supervisor Signature**                                           **Date**

| | |
|---|---|
| *RICHARD E. BAILEY* | November 30, 2018 |

EXHIBIT "3"

# PACS Performance Plan
## Managers/Supervisors
## Appraisal

**Appraisal Year:** 2019                **Plan ID:** 1026264

**Employee:**     VOSS  LUCIE  K              **SSN:** XXX

            **Last**       **First**       **MI**

DISTRICT MANAGER            03E284S            0105/14

**Position Title**               **Position #**           **Series/Grade**

| Summary Appraisal | | Element Average | |
|---|---|---|---|
| **Outstanding Contribution** | X | Ratings in Individual Elements: | |
| **Successful Contribution** | | **Interpersonal Skills** | **5** |
| **Not Successful** | | **Participation** | **5** |
| | | **Demonstrates Job Knowledge** | **5** |
| | | **Achieves Business Results** | **5** |
| | | **Demonstrates Leadership** | **5** |
| | | **Manages Performance** | **5** |
| | | Total | 30 |
| | | **Divide total number of Elements to equal the Element Average** | **5.0** |

## Performance Appraisal:

### 1. Interpersonal Skills:

### Final Rating Discussion:

Lucie, you continue to be a strong communicator. You consistently and effectively handle difficult visitors and callers, to your office with tact and expertise during the course of your interaction and resolve the problems at hand. You resolve PR problems. You have anticipated situations that will strain working relationships within the AD office and Area managers. You stay positive in challenging situations in order to resolve problems and communicate well therefore improving relationships. You defuse situations with the Union president, before they potentially get out of hand.
Well done!

### Final Rating: Level  5

### 2. Participation:

Exhibit 02-03

### Final Rating Discussion:

Throughout the appraisal period you have consistently and routinely gone well beyond your responsibility as the manager. You regular monitor a number of workloads. You have on many occasions made suggestions that have resulted in improved office performance, including suggestions regarding special projects to clear out backlogs, changes in training classes and other items. With a high number of CRTs and new ADM, you are successfully adapting and making needed process and assignment changes to maintain operational achievement. You contribute to the implementation of change by being instrumental in our training initiative for new employees. You invest in employee training, strong advocacy for cross-over training to expand employee contributions and provide more flexibility in their future assignments.

## Final Rating: Level  5

## 3. Demonstrates Job Knowledge:

## Final Rating Discussion:

You have excellent technical knowledge and you consistently share it with others. You respond promptly and accurately within their designated due date. You have a lot of experience with LM/EEO issues and you have
maintained a working relationship with the union. You are a resource to other managers within the Area and willingly share. Over the past 2 years, you have had 2 different ADM's each with developmental needs. I appreciate your efforts with each, especially with your new permanent ADM.

## Final Rating: Level  5

## 4. Achieves Business Results:

## Final Rating Discussion:

You effectively maximize your time to meet your many responsibilities. Although you have some challenges this fiscal year, you have made significant improvement with your PERCs allowances,F01/F02 time and T16 overpayments.You have monitored your office performance in a number of areas including TSRP, waiting time and other workloads. As a result of your monitoring, you have made adjustments and corrections which have resulted in improved performance.

RZs FYTD: 101.88%
LIs FYTD: 109.19%
Med CDRs to DDS FYTD: 485, 9.33 weekly
Waiting Times FYTD: w 9.6 | w/o 34.1
TSRP FYTD: 65.7%
DIB Appts FYTD: 93.1%
WebALJ FYTD: 88.6%
T16 FO1: 4.9
T16 FO2: 12.8
T2 FO1: 14.6
T2 FO2: 9.8

## Final Rating: Level  5

## 5. Demonstrates Leadership:

## Final Rating Discussion:

Exhibit 02-03
Page 9 of 11

You continue to effectively lead management and staff in the achievement of balanced service and

mandated stewardship targets.  You have identified problems promptly and addressed them 00054
successfully.  You have noted areas where workflows need changing.  You have implement the changes
resulting in improved performance.  You have taken an active interest in the area training classes. You
remain positive during a staff and management transition and continue to build a can do culture in the
office.  You appropriately communicate both up and down the line, providing needed context to
subordinates and informing me regarding pertinent issues.

## Final Rating: Level   5

### 6. Manages Performance:

### Final Rating Discussion:

You proactively address both performance and conduct expectations with subordinates. You provide
effective mentoring to our new employees. You have effective oversight of PACS.  I ask that you
continue to work with the ADM and OS and provide examples of both positive performance and areas of
improvement  to help tailor the write up to the specific employee.
I appreciate your efforts in developing your ADM.  Please be proactive in identifying developmental
assignments to your staff as succession planning is vital to our long term success.

## Final Rating: Level   5

| This box will remain blank unless it contains a handwritten signature.  Electronic signatures will be on the last page. |
| --- |

**Informational Appraisal:**

|  Employee | Supervisor | Date |
| --- | --- | --- |

| This box will remain blank unless it contains a handwritten signature.  Electronic signatures will be on the last page. |
| --- |

**Final Appraisal:**

|  Employee | Supervisor | Date |
| --- | --- | --- |

Exhibit 02-03
Page 10 of 11

**PACS Annual Appraisal**

The signatures below pertain to the document identified above.

**Employee Signature**                                    **Date**

**Supervisor Signature**                                  **Date**

*RICHARD E. BAILEY*                                December 20, 2019

Exhibit 02-03
Page 11 of 11

*Document ID: 986194*

# EXHIBIT "4"

BAILEY AFFIDAVIT

I, (name) ___Valerie Fisher_____

Am an _X_____ employee of _____ applicant to _____ former employee of

(Agency) __Social Security Administration _____

(County of Agency) __Monmouth _____

(Office) _Neptune, NJ_____

(Division) __DCO, New York Region _____

Located in (city and state) _Neptune, NJ_____

In the capacity of (show both your organization title and the classification of your job, if different):  Grade _14___ between (date) _4/2011_____ and (date) __current_____

My telephone number during working hours is: _877-815-3184_____

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator, who has been assigned to conduct a thorough and impartial investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record which is true and complete to the best of my knowledge and belief and which full addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information, which is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, my Formal Complaint, and the description of the issue(s) for investigation will serve as the basis for the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence will actually become part of the investigative report. If there are any documents or facts, which substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality; in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Social Security Administration. This means that any

1


(Initials)

Exhibit 11
Page 1 of 7

employee(s) whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of this statement and be given an opportunity to respond.  Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report.  If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report.  If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions.  Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for the participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest.)  I have ___/have not __X____ chosen a personal representative at this stage of my complaint.  In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Enforcement and Compliance in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate.  I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly swear affirm that the statement that follows is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

1.      **What are your name and title?**  Valerie Fisher, District Manager

2.      **How long have you held that position?**  April 2011

3.      **Who are your first and second-line supervisors?**  Richard E. Bailey first line, Ray Egan second line.

4.      **What are your age and date of birth?**  58 years old, 2/14/1962

5.      **Do you have EEO activity, i.e., have you filed an EEO complaint in the past?**  No

(Initials)

Exhibit 11
Page 2 of 7

6.    **What is your relationship to Complainant Lucie Voss?**   Colleague and friend.

7.    **Are you aware of Complainant's age?**   Yes

8.    **When did you first become aware of this EEO complaint filed by Complainant?**
June 2020

*Issue 1:  Whether the Agency subjected Complainant to disparate treatment based on age (over 40), when on June 3, 2020, Complainant learned that she did not receive a Quality Step Increase (QSI) Award.*

9.    **What was your involvement in Complainant not receiving a QSI award for fiscal year 2019?**   None

10.    **To your knowledge, who was responsible for determining which employees received QSI awards for fiscal year 2019?**   Richard E. Bailey

11.    **To your knowledge, did Complainant receive a QSI award for fiscal year 2019?**   No

12.    **Did you have any conversations with Complainant in May 2020 about her not having received a QSI award for fiscal year 2019?**   Yes

13.    **If so, please explain your conversation with Complainant around May 2020 about her not receiving a QSI award for fiscal year 2019.**   Ms. Voss was very upset as for the

3

(Initials)

Exhibit 11
Page 3 of 7

second year as she had an appraisal rating that qualified her for a QSI, yet she was not awarded one.

**14.    Did you remind Complainant during your May 2020 conversation about prior comments Mr. Bailey had made concerning awarding QSIs to younger management employees in an effort to motivate and encourage them?** Yes, when Ms. Voss asked me about it.

**15.    What were these prior comments and when did he make them?** I believe it was in 2018 regarding my 2017 appraisal rating and the award I received. At that time, I questioned Mr. Bailey as to why I did not receive a QSI since I was eligible for one. Mr. Bailey advised me that he only had two QSIs for his area management (I believe that is the number he gave me) that year. I reminded Mr. Bailey that I was nearing my retirement and that a QSI would have a significant impact on the computation of my retirement. It was at that time when Mr. Bailey stated that we had this discussion during an area meeting and he told all the managers that he felt we should give the QSIs to younger management employees, which includes supervisors, in an effort to encourage and motivate them. I stressed that I had to disagree with this as these are employees that have many years ahead of them during their careers to reach the top of the grade that that their not receiving a QSI did not have as significant of an impact as someone such as myself nearing the end of their career.

**16.    Did you have a conversation with Complainant in spring 2019 about her not receiving a QSI award for fiscal year 2018? If so, please describe the conversation.** I do believe we did in fact discuss this in 2019. Ms. Voss was very upset about having not received a QSI, as was I again, since we both were rating eligible for this type of an award. At that time, I do recall Ms. Voss feeling very under appreciated. We once again during this conversation discussed Mr. Bailey my conversation the prior year.

**17.    If so, did you tell Complainant during your spring 2019 conversation that Mr. Bailey had said he wanted to award QSIs to younger management employees in an effort to motivate and encourage them?** Yes, see #15.

**18.    If so, when did Mr. Bailey make this comment?** I do not recall the exact date.

4

(Initials)

Exhibit 11
Page 4 of 7

19.    Did you have a conversation with Complainant in spring 2018 about her not receiving a QSI award for fiscal year 2017?  Yes, I did.

20.    If so, did you tell Complainant Mr. Bailey had said he wanted to award QSIs to younger management employees in an effort to motivate and encourage them?  Yes, I reminder her.

21.    If so, when did Mr. Bailey make this comment?  I do not recall the exact date but I do recall it was at an area management meeting.

22.    Has Mr. Bailey ever told you he wanted to give QSI awards to younger employees? If so, when and why?  Yes, he did.  We discussed it when I did not receive a QSI – see #15.

23.    Do you have reason to believe Richard Bailey considered Complainant's age in not granting her a QSI award for fiscal year 2019?  If so, why?  Please explain.  I can only say that Mr. Bailey previously informed me that these decisions are difficult and he chose to give them to younger employees to motivate and encourage them.

24.    To your knowledge, did Complainant ever tell Mr. Bailey she believed a QSI would have a positive impact on her perspective pension upon retirement?  Ms. Voss and I had a conversation regarding this after she had a conversation about it with Mr. Bailey since she knew I had a similar conversation with him in the past.

25.    If so, when did she tell him?  I do not recall the date.

*Issue 2:  Whether Complainant was subjected to disparate treatment based on reprisal (prior EEO activity) when on June 25, 2020, management issued Complainant a proposed 14-day suspension.*

26.    What was your involvement in Complainant receiving a proposed 14-day suspension on June 25, 2020?  None.

5

(Initials)

Exhibit 11
Page 5 of 7

**27.    Who made the decision to issue the suspension?**  In a conversation with Ms. Voss she told me, Mr. Bailey issued her this notice.

**28.    To your knowledge, why was Complainant issued a proposed 14-day suspension?**
To the best of my knowledge, Ms. Voss was approached by an employee in a medical office where she had an appointment because the employee knew where Ms. Voss worked.  The employee told Ms. Voss she had left multiple messages for an employee in the Bridgewater office and had not received a call back.  Ms. Voss having had a working relationship with the SSA employee in Bridgewater in the past called him and asked that he reach-out to the medical office employee regarding the case.  I do not know any of the specifics of the case.

**29.    Do you have reason to believe Richard Bailey considered Complainant's EEO activity in issuing her the proposed suspension?  If so, why?**  Unknown.

**30.    Regarding Claimant jurisdiction, have you ever assisted a Claimant that did not reside within your field office?**  Yes, on a regular basis, as do all SSA employees, including SSA management.

**31.    How often do District Managers assist Claimants who are not in their jurisdiction?**
At SSA our field offices do not have jurisdictions; we have service areas.  We frequently assist people that reside outside of our service areas, often assisting the public from anywhere in the country.  The public can contact and do business with whatever SSA office they choose.  On a regular basis, we receive calls or visitors outside of our service areas and our instructions are not to turn people away or direct them to their servicing office; we render service in the office that they choose to deal with.  Managers often interact directly with the public as we are called upon due to high visitor and/or call volume to assist at the reception desk or to answer our general inquiry line.  We do not confirm that the individual is in our service area, we just render the best possible service despite their address or servicing office.  In terms of the legal meaning of the word jurisdiction, field offices do not have jurisdictions, they have service areas.

**32.    Is there a policy that details how District Mangers interact with Claimants, in or outside of their jurisdictions?**  If so, please provide.  There is none, we are to assist anyone that contacts our office.  As stated in #31, the public can deal with whichever office they choose.

6

(Initials)

Exhibit 11
Page 6 of 7

33.    Are there any policies or regulations which prohibit District Mangers from assisting Claimants who do not reside within their field office?  If so, please provide a citation to the policies?  None, see # 31 and #32.

34.    Do you have any documents which are relevant to these claims?  If so, please provide.  No.

35.    Do you have any witnesses who have information relevant to these claims?  If so, please provide their names and what information they could provide.  No.

36.    Do you have anything else to add, which is not covered above, concerning the accepted issue(s)?  No.

I have reviewed this statement, which consists of 7 pages, and hereby solemnly swear affirm that it is true and complete to the best of my knowledge and belief.  I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____    _12/23/2020_____
**(Signature of Deponent)**                    **(Date)**

7

_____
(Initials)

Exhibit 11
Page 7 of 7

EXHIBIT "5"



# SOCIAL SECURITY

8 Commerce Way
Suite 120
Trenton, New Jersey 08691

June 25, 2020

Re: Proposal to Suspend

Lucie Voss
190 Middlesex Turnpike
3rd Floor
Iselin, NJ 08830

Dear Ms. Voss:

In accordance with Title 5 Code of Federal Regulations (CFR) Part 752, this constitutes notice that in order to promote the efficiency of the Federal Service, I propose to suspend you from pay and duty status for fourteen (14) calendar days from your position as District Manager (DM) in the Woodbridge Field Office (FO) of the Social Security Administration (SSA) and the Federal Service, no less than fifteen (15) calendar days from the date you receive this notice.

My reasons for proposing your suspension are:

1.  Conduct Unbecoming a Management Official.

2.  You directed a subordinate to improperly access information from SSA's computer systems records and then disclosed that information to someone entitled to receive the information.

3.  You improperly accessed information from the SSA computer systems records in an unauthorized manner without disclosing the information.

The specifics of your case are as follows:

**Charge 1: Conduct Unbecoming a Management Official**

**Specification:**

On January 15, 2020, I held an investigative interview with you concerning your involvement with claimant Nancy Adams Case. You explained that you met Susan Adams at a Med-Emerge urgent care clinic and recommended that Susan's sister, Nancy Adams, apply for disability benefits. You made an appointment for Nancy Adams to file for SSI benefits at her local office in Bridgewater. After the Bridgewater office issued an Award Letter, you queried the SSID for Nancy Adams, and then asked

Exhibit 15
Page 1  of 11

your subordinate to obtain an IRS alert. You then called Susan Adams and gave her information from the alert and advised her to call the Bridgewater office.

Regardless of whether Susan Adams was your friend or your acquaintance, you provided assistance to Susan Adams that could be construed as a favor or special treatment. You are the DM of the Woodbridge FO, Nancy Adams' claim did not fall under the jurisdiction of the Woodbridge FO, and was being handled by the Bridgewater FO. By assisting Susan and Nancy Adams, and in particular, by notifying Susan of the IRS alert and advising how she should proceed, you were participating in a case that was outside of your office's jurisdiction and official work duties, and thereby providing assistance that could be construed as a favor or special treatment.

**Charge 2: You directed a subordinate to improperly access information from SSA's computer systems records and then disclosed that information to someone entitled to receive the information.**

SSA's *Agency Policy for Systems Access, Table of Penalties for Violations and Acknowledgement Statement by Employees* (APSA) was established to inform employees of the importance of maintaining the security of the information maintained in SSA computer systems records and of the consequences for various types of systems security violations. The policy reiterates the responsibility all employees have to access information within SSA computer systems records only when related to the employee's official duties.

Per the APSA, an employee commits a Category B Systems Access Violation when he or she improperly accesses a record with a purpose other than personal or monetary gain or malicious intent, and discloses the information to someone who is entitled to receive the information. Access is improper based on the employee's relationship to the requestor or because it is unrelated to the employee's official duties.

At your investigative interview on January 15, 2020, you admitted to me that you queried the SSID for Nancy Adams and saw an IRS alert. You then directed Ms. Rengifo, Claims Technical Expert (CTE) Woodbridge, to obtain the alert and give it to you. After you obtained the information from Ms. Rengifo, you called Susan Adams, the representative payee for Nancy Adams, and gave her information from the IRS alert.

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. As such, you had no business reason to obtain the IRS alert. By directing, Ms. Rengifo to obtain the IRS alert on your behalf and then provide the information to you, you directed your subordinate employee to improperly access information from SSA's computer systems that was unrelated to your official duties. By disclosing the information to Susan Adams, you disclosed information from SSA's systems records to someone entitled to receive the information.

**Charge 3: You improperly accessed information from the SSA computer systems records in an unauthorized manner without disclosing the information.**

Per the APSA, an employee commits a Category A Systems Access Violation when he or she improperly accesses a record that contains sensitive or protected information or obtains information not related to the employee's official duties, but does not disclose the information. Access is improper

2

Exhibit 15
Page 2  of 11

because of the employee's relationship with the requestor or because it is unrelated to the employee's duties.

*Specification 1:*

On January 4, 2019, you improperly accessed SSA's computer systems records by browsing the Modernized Supplemental Security Claims System (MSSICS) application of Nancy Adams one (1) time, and the Modernized Claim System (MCS) one (1) time.

The Modernized Claim System (MCS) is the system SSA uses to procure Title II claims.

The Modernized Supplemental Security Claims System (MSSICS) is the system SSA uses to procure Title XVI claims.

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 2:*
On January 10, 2019, you improperly accessed SSA's computer systems records and obtained two (2) queries on the record of Nancy Adams. Specifically:

- Accessing Nancy Adams' application via MSSICS and MCS

- Obtaining two (2) Supplemental Security Income Display (SSID) queries on Nancy Adams

The SSID contains Supplemental Security Income (SSI) information, including payment history, address, bank information, medical data (if applicable), income and resources.

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 3:*
On January 26, 2019, you improperly accessed SSA's computer systems records and obtained one (1) query on the record of Nancy Adams. Specifically, you obtained:

- One (1) SSID

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 4:*
On March 5, 2019, you improperly accessed SSA's computer systems records and obtained three (3) queries on the record of Nancy Adams. Specifically, you obtained:

3

Exhibit 15
Page 3  of 11

- One (1) SSID
- One (1) Summary Earnings Query (SEQY)
- One (1) Abbreviated Account Query (AACT)

The SEQY response provides the requesting employee with the Number Holder (NH's) lifetime earnings in yearly totals without providing specific earnings-related data, such as the name and location of employers

The AACT is an immediate response online query that displays Social Security (Title II) benefit information.

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 5:*
On May 21, 2019, you improperly accessed SSA's computer systems records by browsing the MSSICS application of Nancy Adams.

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 6:*
On May 24, 2019, you improperly accessed SSA's computer systems records by browsing the MSSICS application of Nancy Adams.

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 7:*
On May 29, 2019, you improperly accessed SSA's computer systems records by browsing the MSSICS application of Nancy Adams and by obtaining one (1) query on the record of Nancy Adams. Specifically, you obtained:

- One (1) SSID

Your access of Ms. Adams' record was improper because, you did not have a valid business reason to access her record, and your access was not related to your assigned duties.

*Specification 8:*
On June 7, 2019, you improperly accessed SSA's computer systems records by browsing the MSSICS application of Nancy Adams four (4) times and by obtaining one (1) query on the record of Nancy Adams. Specifically, you obtained:
- One (1) SSID

4

Exhibit 15
Page 4  of 11

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 9:*
On June 8, 2019, you improperly accessed SSA's computer systems records and obtained two (2) queries on the record of Nancy Adams. Specifically, you obtained:

- Two (2) SSIDs

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 10:*
On July 26, 2019, you improperly accessed SSA's computer systems records and obtained one (1) query on the record of Nancy Adams. Specifically, you obtained:

- One (1) SSID

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 11:*
On August 10, 2019, you improperly accessed SSA's computer systems records and obtained three (3) queries on the record of Nancy Adams. Specifically, you obtained:

- Three (3) SSIDs

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 12:*
On August 29, 2019, you improperly accessed SSA's computer systems records and obtained one (1) query on the record of Nancy Adams. Specifically, you obtained:

- One (1) SSID

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 13:*
On September 24, 2019, you improperly accessed SSA's computer systems records and obtained one (1)

Exhibit 15
Page 5 of 11

query on the record of Nancy Adams.  Specifically, you obtained:

- One (1) SSID

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction. You did not have a valid business reason to access her records, and your access was therefore improper.

*Specification 14:*
On October 11, 2019, you improperly accessed SSA's computer systems records by:

- Browsing the MSSICS application of Nancy Adams two (2) times
- Obtaining one (1) SSID query on the record of Nancy Adams

Ms. Adams does not live in the Woodbridge FO servicing area and her claim was not under your jurisdiction.  You did not have a valid business reason to access her records, and your access was therefore improper.

**Factors Considered**

In determining what action to propose, I have considered the nature and seriousness of your offenses and their effect on the mission of the agency.  Your actions constitute a misuse of the systems access privileges you are required to have in order to perform your official duties.  The agency has made it clear that it views misuse of these privileges very seriously.   Additionally, directing a subordinate to perform a query that would violate the systems access policy and showing favoritism to an individual are very serious offenses.

I have considered the position you hold and your level of responsibility and independence.  As a DM, you hold a vital position within SSA with a high level of responsibility and independence.  Your position with SSA affords access privileges to the agency's broad network of computer systems and records.  Given the confidential nature of this information and the considerable amount of independence you exercise in performing your duties, you are expected to adhere to the agency's policy regarding access of official records and the disclosure of the confidential information they contain.  You violated agency policy when you inappropriately, and without authorization, used your position and access privileges to intentionally access the records of an individual outside of your assigned duties.  Additionally, in performing queries on a claim outside of your office's jurisdiction, you showed favoritism to an individual member of the public.  Your actions, specified in each charge, go directly against the agency's mission to protect the records of individuals and to service the public in a professional, impartial manner.  They show a complete disregard for the mission of the agency and for the integrity of the information maintained in the agency's computer system.

I have also considered that as a DM, you hold a vital position within the agency, which requires you to take a lead role in ensuring that your employees are fully knowledgeable of the rules and regulations regarding systems access.  Nevertheless, you purposefully directed one of your subordinates to improperly access information that was unrelated to your official business duties.  Given the nature of your position, the agency must be confident that you will adhere to all agency policies and procedures in

6

Exhibit 15
Page 6  of 11

the performance of your duties, as well as direct your subordinates, to adhere to agency policies and procedures.

I have considered the frequency and clarity of information issued to all employees, including you. Each time you access the SSA computer system a warning appears stating "…its misuse is subject to disciplinary action." When you initially applied for systems access, you signed Form SSA-120-U4, Application for Access to SSA Systems. By signing the document, you acknowledged that you had read and understood the security requirements on the reverse of the form. These requirements state that SSA's computer systems must be used only for work related purposes.

In addition, on an annual basis you have signed a statement acknowledging that you read and understood a document with the subject line, "Clarification of Agency Policy for Systems Access, Table of Penalties for Violations and Acknowledgement Statement by Employees—INFORMATION." This memorandum describes what constitutes an unauthorized access and communicates specific penalties for various types of unauthorized accesses. It serves notice that the agency views such offenses very seriously and that disciplinary action will be taken when such offenses are discovered. The directives and reminders described above were communicated to you to ensure that you understand that you are prohibited from accessing records for other than assigned or authorized business purposes. You last signed this document on December 23, 2019 and November 28, 2018. In addition, you completed online Systems Sanctions Training on April 27, 2019.

I have also considered the Standards of Conduct as discussed in the *Annual Personnel Reminders (APR)*, issued to all employees, including you, on a yearly basis. Section 1.5, under the subheading *Use of Official Records, Information and Online Services*, states in part that you may not access SSA records or databases to "Obtain, review or use personal data about a member of the public when you do not need such data in your Social Security work." Section 1.5 of the APR, under the subheading, *SSA Records and the Need-to-Know,* states in relevant part, "Under the Privacy Act of 1974 and SSA regulations, employees may access agency records only when they have a "need-to-know". You have a need-to-know only when you are required to know, access, use, or possess the information in the performance of your official duties. If you do not have a specific work-related need for the information contained in SSA records to perform your official duties, you may not access, use, possess, or disclose the information."

I have considered that the APSA expressly states that "members of management, like other Agency employees, are generally allowed to assist those in the community that are acquaintances but not friends *provided that the assistance is the same that is provided to any other member of the public and not something that would be construed as a favor or special treatment.*" You explained at your interview with me on January 15, 2020 that Susan Adams (the sister and representative payee of Nancy Adams) was a nurse that had attended to you at an urgent care clinic. Regardless of whether Susan Adams was your friend or your acquaintance, you provided assistance to Susan Adams that could be construed as a favor or special treatment. By notifying Susan Adams of the IRS alert and advising how she should proceed, you were participating in a case that was outside of your office's jurisdiction and official work duties, and thereby providing assistance that could be construed as a favor or special treatment.

The directives and reminders described above were regularly communicated to you to ensure that you understood that you are prohibited from accessing records for any purpose other than assigned or

7

Exhibit 15
Page 7  of 11

authorized business purposes. You were repeatedly given notice that the agency views such offenses very seriously and will take disciplinary actions when such offenses are discovered. Nevertheless, you queried the system numerous times for unauthorized purposes, without regard to the agency's policies.

I have considered the adequacy and effectiveness of alternative sanctions to deter such conduct in the future. I have considered the Table of Penalties and the egregiousness of your actions and your involvement of subordinate employees has warranted a harsher penalty than the Table prescribes. I considered that you received ample notice about the seriousness with which the agency views these offenses, combined with the knowledge that systems access violations would subject you to disciplinary action including possible removal. Nevertheless, your awareness of the potential penalties did not deter you from committing these offenses. I also considered the consistency of the penalty imposed here with any penalty imposed in any other cases where managers might have engaged in similar misconduct.

I also considered your past work history and performance during your forty-four (44) years of Federal Service and weighed these factors in your favor. However, upon consideration of the gravity of your offenses, their impact on the agency's mission, and the number of written warnings that have been issued to all employees, including you, I concluded that a fourteen-day suspension would be appropriate.

Consequently, in order to promote the efficiency of the Federal Service, I propose to suspend you from duty and pay for fourteen (14) calendar days.

You have ten (10) calendar days following the date of receipt of this letter in which to furnish reasons why this proposed suspension should not be effectuated. Consideration will be given to extending this time limit to respond to this proposal provided you submit a written request for an extension to the official described in the following paragraph.

Any reply you wish to make should be addressed to the deciding official, Ms. Andrea Wilder, Assistant Regional Commissioner, Management and Operations Support. Ms. Wilder's office is located at 26 Federal Plaza, Room 4010A, New York, New York 10278. Ms. Wilder may be reached at (212) 264-4791. Full and careful consideration will be given to your reply, should you choose to make one, before a final decision is made on this proposal.

8

Exhibit 15
Page 8  of 11

You may have an attorney or another person represent you.  The agency may disallow as a representative an individual whose activities as a representative would cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or whose priority work assignments preclude his or her release.  Please advise Ms. Wilder, in writing, of the name of your representative, if any.

If you have any questions concerning your rights or the regulations applicable to this action, or the material relied upon in taking this action, you may contact me.

Your duty status remains unchanged pending disposition of this proposal.

Sincerely,

Richard E. Bailey
Area Director, Area 5

**Attachments:**
Memo to File
APR Section 1.5
APSA
Sanitized Administrative Confidential

**A copy of this letter will be placed in your electronic 7B Extension File.**

9

Exhibit 15
Page 9  of 11

I have delivered a copy of the Proposal to Suspend dated June 25, 2020 to Lucie Voss.

_____
(Signature)

_____
(Date)

Vin - Email -
Via - UPS Overnight.

10

Exhibit 15
Page 10  of 11

I, Lucie Voss, have received the Proposal to Suspend letter dated June 25, 2020.  My signature merely confirms my receipt of a copy of this proposal and does not imply my concurrence with the content of the proposal.


_____

 (Signature)


_____

(Date)

11

Exhibit 15
Page 11  of 11

# EXHIBIT "6"

EEOC Appeal No. 2021004702

My name is Peggy Murphy.  I am making this statement in my capacity as Immediate Past President for the National Council of Social Security Management Associations (NCSSMA) and not as a representative or agent of the Social Security Administration (SSA).

I was contacted about a disciplinary action that was being proposed on District Manager Lucie Voss.    At the time, I was NCSSMA President.  NCSSMA does not represent individual managers or get involved in issues that are specific to an isolated situation.    This situation was concerning to me because the proposed discipline seemingly had the potential to affect every manager in our agency, because the actions being described to me were actions that we take every day in the course of our day as we help people in and out of our service area and because of doing so she was charged with:

1.  Conduct Unbecoming a Management Official.
2.  Directing a subordinate to improperly access information from SSA's computer systems records and then disclosed that information to someone entitled to receive the information.
3.  Improperly  accessing  information from the SSA computer systems records in an unauthorized manner without disclosing the information.

Based on my concern for this action having the capability to impact on every manager, I reached out to Eric Jones, Assistant Deputy Commissioner for Operations and to Fred Maurin, Assistant Deputy Commissioner for Operations.   I shared my concerns based on my knowledge of the incident, and I asked them to please look into the facts of the case because of the potential impact.   They agreed to do so.

/s/ Peggy Murphy

# EXHIBIT "7"

SWORN STATEMENT OF DAVID LESCARINI IN THE MATTER OF LUCIE K. VOSS
EEOC CASE: 2021004702

My name is David Lescarini.  I am the District Manager of the Social Security District
Office in McMinnville, Tennessee and current President of the National Council of Social
Security Management Associations (NCSSMA).

I have worked for the Social Security Administration (SSA) for almost 22 years, 18 of
which were in a management position.

Based on my knowledge and experience the term "jurisdiction" is essentially a technical
term and is used only at the initial claims level to determine which SSA Field Office has
responsibility for adjudicating the claim.  The official term "Service Area" not
"jurisdiction" is used to describe the specific group of Zip Codes that an office is
responsible for when it comes to serving customers.  This in no way prohibits a field
office employee from helping customers who reside outside the specific service area of
their office.

It is very common for employees, including managers, to assist customers in
neighboring office service areas and even customers from further afield.

In my experience and based on my interaction with management personnel from all
over the country, the term "jurisdiction" in no way applies to the scope of action of field
office employees including management and therefore is not something that would or
should be the basis for discipline.  I know of no field office employee, including
management, that has ever been disciplined for providing service to individuals who
reside in other field offices' service areas.

I declare that to the best of my knowledge and belief, the information herein is true and
complete.  I understand this statement is made for use as evidence in the EEOC matter
stated above and is subject to penalty for perjury.


X _David Lescarini_
_____
David Lescarini
President NCSSMA

                              Thursday, September 02, 2021